## JOHNSON *et al.* v. HAYES *et al.*

1. Where a testator makes his will and subsequently conveys the land therein devised by deed, such conveyance operates as a revocation of the devise.

2. In such a case if the devise and the deed be to the same person, and other benefits are given to him by the will, he is not put to an election to claim under the will or the deed,—he may claim under both.

(a) A testator, after making some specific legacies, devised and bequeathed the residue of his estate, both real and personal, to his seven named children, to be equally divided between them; thus he gave to two sons all his lands, to be accounted for to his executors at five dollars per acre, which sum when added to the balance of his estate was to be equally divided between all of his children, after the deduction of $500 for each of his sons and two of his daughters. Should either or both of the sons die leaving no living children, his or their land was to revert to the testator's estate. Subsequently to the making of the will the testator conveyed to the sons the land in consideration of their note for $6,300, and their agreement to allow him and his wife to occupy a portion of the dwelling-house and to support them during life. The sons entered into possession of the land. Upon the death of the testator the sons, who were the nominated executors, probated the will and letters testamentary were issued to them. In their inventory of the assets of the estate they included the note for the purchase-money of the land. *Held*, that the sons were not put to an election between the

conveyance to them by deed and the benefits derived by them under the will. They take under both.

3. Where two of the daughters sued the executors for their legacies, and the purchase-money note for the land entered into the accounting, and judgment was rendered against the executors, the satisfaction of such judgment would estop the plaintiffs from claiming a reversion of the land because of the death of one of the sons without issue. The record of such suit was competent evidence.

4. The deed from the testator to the sons, their written contract of purchase, and the testimony of a subscribing witness were admissible to show the details of the transaction.

5. The declaration of one in possession of land is admissible to show his adverse possession.

6. The reception in evidence of irrelevant testimony, when not prejudicial, does not vitiate a trial.

7. There was no error in the rulings on the motion to strike the pleas, which was hurtful to the plaintiffs; the evidence was without conflict; and the verdict directed by the court was the only possible legal result.
JANUARY 14, 1913.

Complaint for land. Before Judge Walker. Glascock superior court. October 18, 1911.

*L. D. McGregor* and *M. E. Evans,* for plaintiffs.

*W. H. Barrett* and *E. P. Davis,* for defendants.

EVANS, P. J. The heirs at law of Samuel Hart sued Marshall Hayes to recover a tract of land. The defendant disclaimed title, and his landlord, W. E. English, executor of William Hart, and Mrs. Nealy Hart, widow of William Hart, were made parties defendant. Plaintiffs and defendants derive their title from Samuel Hart. The plaintiffs claim as reversioners under the will of Samuel Hart; the defendants claim that Samuel Hart sold and conveyed the land to William Hart prior to his death, that the alleged legacy to the plaintiffs had been adeemed, and that the proceeds of the note given for the purchase-money of the land, which was collected after the death of Samuel Hart, had been distributed among the plaintiffs and accepted by them with full knowledge of all the facts. On the trial it appeared that Samuel Hart in the year 1872 made his last will, wherein, after making certain specific legacies, he bequeathed and devised as follows: "Item 5. I give, bequeath, and devise the balance of my estate, both real and personal, to the following named children, viz., Isaac, Isabel, Elizabeth, Martha, Mary Ann, William, and Absalom, in the manner and form following, viz.: The property in this item to be equally divided among the seven named children; thus, to my two sons

William and Absalom I give all my lands, to be accounted for to the executors at five dollars per acre; that is, they must pay into my estate, or charge themselves as if they had paid it, the amount my lands would bring at five dollars per acre. This added to the residue of my estate, making whatever amount it may, out of this amount five hundred dollars to be paid to William, five hundred dollars to Absalom, five hundred dollars to Mary Ann, and five hundred dollars to Martha, to make them even to what has already been advanced to the others; then the balance of said amount to be equally divided among the seven named in this item. 6. Should either of my sons William or Absalom, or both, die and leave no living children, in that case I direct that his or their land revert to my estate." Absalom and William Hart were nominated executors. On December 2, 1878, Samuel Hart conveyed by deed 1,260 acres of land (embracing the land in controversy) to his sons Absalom and William Hart, upon a consideration of $6,300, and their agreement to allow him and his wife to occupy a certain portion of the dwelling-house and to support them during life. Absalom and William Hart went into possession of the land upon the making of the deed, and after the death of their father divided it between themselves. The will of Samuel Hart was probated in 1886, and Absalom and William Hart qualified as executors. They made a sworn inventory of the assets of the estate, pursuant to law, which embraced the $6,300 note given for the purchase of the land. Two of the devisees sued and recovered their legacies. The executors were discharged. William Hart died in 1910 without children, and English qualified as his executor. Some other facts were also developed on the trial; but as they are in no wise inconsistent with the foregoing, and are irrelevant to the controlling facts, it is unnecessary to set them out. The court directed a verdict for the defendants.

The uncontradicted evidence disclosed that Samuel Hart, after executing his will, conveyed the land referred to in items 5 and 6 of his will to his sons Absalom and William, in consideration of $6,300 (for which amount they gave their notes) and their undertaking to support him and his wife during life. The grantees immediately entered into possession of the land. Upon the death of their father Absalom and William Hart probated the will, being the nominated executors therein. They asserted their title to the

land under the deed, and never treated it as belonging to the estate of their father. They included the note given for the purchase of the land in the inventory and appraisement of the estate. As they accepted certain benefits under the will, it is contended by the plaintiffs that they were put to an election, and, as they claimed under the will, are estopped from asserting title to the land by virtue of the deed to them from their testator.

1. By the common law an absolute conveyance of all of a testator's property after making his will operated as a revocation of the will. But an absolute conveyance of lands which were specifically devised, made after the execution of the will, operated only as a revocation of the devise; for in such case the testator does not die seized, and his alienation after making the devise is conclusive evidence of a change of intention with regard to such testamentary disposition. 6 Cruise's Dig. § 59, p. 93; *Epps* v. *Dean, 28 Ga.* 533; *Worrill* v. *Gill, 46 Ga.* 482. Where a testator has subsequently aliened the specific land which he had devised, at his death he has no estate therein to pass to the devisee by his will. The testator in this case, after making certain specific bequests, devised and bequeathed the balance of his estate to certain named children, conditioned that if either of his sons should die without leaving children his land was to revert to his estate. The land in controversy was a part of this residue, and the testator's subsequent conveyance of the land amounted to a revocation of items 5 and 6 to the extent of the land conveyed by deed, and no reversion to the estate of Samuel Hart accrued upon the death of William without living children.

2. But it is contended that the devisees were put to an election to claim under the will or under the deed. This contention is predicated on the principle that when a testator has affected to give property not his own, and has given a benefit to a person to whom that property belongs, the devisee must elect either to take under or against the instrument. Civil Code, §§ 3910, 4610. This principle does not apply to the circumstances of this case. An illustration of a case where it would apply is where A by his will gives to B property which belongs to C, and by the same instrument gives to C other property which belongs to the testator; in such a case C will be put to an election either to claim under the will or assert his independent title to property devised to B.

If the deed from Samuel Hart to his sons had antedated the former's will, they would have been put to an election. But the deed was made subsequent to the execution of the testator's will. The devisees are not setting up a title antagonistic to their testator; they are giving effect to his manifest purpose and intention. It was the intention of the testator that the sons should take both under the deed and under the will, and there is no subject for election.

In Hattersley *v.* Bissett, 51 N. J. Eq. 597 (29 Atl. 187, 40 Am. St. R. 532), a testator devised specific land to certain named children, and by residuary clause he devised the residue of his estate to two daughters to be equally divided between them. Subsequently to the making of his will the testator conveyed by deed to one of the residuary devisees certain land devised to her in the will and also certain land which was devised to a son. The son filed a bill to require the residuary legatee to make an election under which instrument, viz., the deed or the will, she elected to claim; and the court held that "a conveyance by a testator to his daughter, after the execution of his will, of lands devised to his son, operates as a revocation of the devise to the son, and the daughter is not compelled to elect between the conveyance to her by deed and the benefits derived by her under the will. She takes under both." To the same effect is Thompson *v.* Thompson, 2 Strob. 48. Our own case of *Worrill* v. *Gill,* 46 *Ga.* 482, is decisive of the matter. It was there held: "Where a testator, in 1854, made his will, by which he left certain land to his son, whom he appointed executor, and in 1856 conveyed the land to his son by deed, reserving a life-estate to himself, and delivered the deed to his son, the legacy is adeemed. If, on the death of the testator in March, 1864, the son takes immediate possession of the land, claiming it under the deed, and in January, 1865, prove the will and qualify as executor, but does not return the land as part of his father's estate, he is not estopped by the probate and his qualification as executor, without more, from setting up his title under the deed adverse to the will."

3. Moreover, two of the plaintiffs were estopped by suits brought against Absalom and William Hart, executors of Samuel Hart, to recover their legacies under the will of Samuel Hart. These suits were prosecuted to judgment. The record of the proceedings in that case was admissible to show that their shares of the purchase-

money note were involved in the accounting for which they obtained judgment. And in this connection it was allowable to show that others of the plaintiffs or their ancestor were present at these trials, as illustrating their knowledge that the executors were accounting for the purchase-money of the land. It appeared also that the executors accounted for the purchase-money of the land, and had been discharged from their trust, and, in the absence of proof to the contrary, it will be presumed that all of the estate of Samuel Hart, including the $6,300 note for the purchase-money of the land, had been distributed among the legatees.

4. When Samuel Hart sold and conveyed the land to his sons Absalom and William, he took from them a contract reciting that, in addition to the $6,300 note which they gave to him, they were to allow him and his wife to occupy a part of the dwelling-house on the land, and to provide for them during their lives. This contract was signed by them. The court allowed in evidence the deed from Samuel Hart to Absalom and William Hart, the contract, and the testimony of a subscribing witness detailing the circumstances under which the same were made. This evidence was competent.

5. Objection was made to the reception in evidence of certain declarations of William Hart, made while in possession of the land, tending to show his adverse possession. The objection was properly overruled. Civil Code, § 5767.

6. Certain testimony relating to another suit between Diza Hart, widow of Samuel Hart, and his executors, even if irrelevant, could not have hurt the plaintiffs.

7. Other matters of estoppel were urged by way of plea against the plaintiffs' right to recover, and evidence was received in support of the same. We do not consider it profitable to discuss these matters, inasmuch as the rulings heretofore made are conclusive against the plaintiffs' right to recover. There was no error in the rulings on the motion to strike the pleas, which was hurtful to the plaintiffs; the evidence was without conflict; and under the law no possible verdict could have been legally rendered other than for the defendants.

*Judgment affirmed. All the Justices concur.*