WILKINSON *et al. v.* TUGGLE, administrator, *et al.*

1. Where certain parties, claiming that they were heirs of a named decedent, brought their petition against the grantees in a deed executed by the decedent in her lifetime, for the purpose of having the deed canceled on the ground that it had been obtained by fraud, and that the grantor was mentally incapable of executing a deed of conveyance at the date of the deed, and also showed in their petition that subsequently to the execution of the deed the grantor therein had executed a will, which, after making certain special bequests of stated sums of money, devised the property in question, a lot of land, to the grantees in the deed, but also provided that the devise in their favor should not take effect unless they reconveyed the land in question to the estate of the testator, the petition was properly dismissed upon general demurrer.

2. An instrument purporting to be a deed of conveyance, containing a description of a specified tract of land, and being as to form in all respects a duly executed warranty deed of conveyance, except that it contained a reservation immediately following the description of the land conveyed and preceding the habendum and tenendum clauses, which reservation is in the following language: "It is expressly understood

that the fee title to this property is not to vest in the said grantees until after the death of the grantor, the grantees herein taking a vested remainder subject to the life-estate of the grantor, which is reserved," conveyed a vested remainder which took effect at the expiration of the life-estate reserved.

No. 3262.   JANUARY 22, 1923.

Equitable petition. Before Judge Roop. Troup superior court. April 26, 1922.

*Raymond Martin* and *A. H. Thompson,* for plaintiffs.

*W. E. Armistead* and *W. T. Tuggle,* for defendants.

BECK, P. J. Will Wilkinson and others filed their petition against W. T. Tuggle, administrator of Bill Dix, and against Miles Wilkinson, and alleged, in substance, that Amanda Wilkinson died on the 14th day of January, 1917, seized and possessed of a certain lot in the city of LaGrange, as described in the petition, which lot was of considerable value; that she died intestate; that she left no debts unpaid; that her sole heirs at law were the plaintiffs and the defendants; that all of her heirs were of age and sui juris; that there has been no administration on her estate; that her estate descended by law to her heirs above named, share and share alike; that on the 23d day of August, 1915, Amanda Wilkinson, who was then about seventy-five or eighty years of age, feeble, and unable to read or write (having been stricken with paralysis), was totally unable mentally and physically to transact business and incapable of entering into a contract, and remained in that condition until her death; that on the date last stated Bill Dix, by persuasion and inducements and the statement that he wanted to fix her property so that it could not be sold during her lifetime, induced her to sign a deed (a copy of which is attached as an exhibit), and after gaining her consent thus fraudulently, he procured a warranty deed to be written and executed by her, she being induced fraudulently to sign it; he telling her that the deed was merely for the purpose of preventing her property from being sold during her lifetime; that she signed by making her mark; that Miles Wilkinson was represented by Bill Dix in the transaction; that the consideration was five dollars, love and affection and support for the grantor during the balance of her life; that the plaintiffs supported her; that the deed was null and void and a cloud on the title of the rightful owners; that it was procured by fraud; that the grantor was incapable of making a contract; that

there was no consideration for the deed, or, if any, it totally failed; that upon the death of the grantor, without will, the land described in the deed descended directly to all of the heirs of the grantor; and that the property is not now and never has been in the possession of the grantees in the deed.

The petition was amended by making other parties, and by attaching a copy of a will and codicil of Amanda Wilkinson, which had been probated. The will contained two items. The second item appointed an executor. The first item contained certain special bequests, two of $100 each, and one of $50, and a residuary clause reading as follows: "The balance of my estate I give and bequeath to my nephews Will Dix and Miles Wilkinson, share and share alike." This will was executed in 1914. In November, 1915, the testatrix executed a codicil, and declared that it was "intended to revoke a former provision and modification as to William Dix and Miles Wilkinson;" that her reason for so doing was that on August 23, 1915, "they had me unconsciously to sign a deed putting title to all my land in them, being deceived in doing so. Therefore I now change and modify my will as follows: 'I will and devise in the event that William Dix and Miles Wilkinson refuse to quitclaim title to me of the land they had me unconsciously to sign to them on August 23, 1915, and do so within ten days, then they are not to share in a provision of my will, my intentions being on their refusal within the said ten days time to place the title back in me, they are not to share any part of my property at my death; and further, having assumed a payment of $50.00 as fee to one D. J. Gaffney, and this being necessitated by them, if said William Dix and Miles Wilkinson fails or refuses to pay said fee or secure its payment to the satisfaction of said D. J. Gaffney within thirty days from the signing of this will, then the said William Dix and Miles Wilkinson are not to share in division of my property or any part of it, their failure to do as here directed is the only cause or reason I have for cutting them out of any part of my property at my death, and I want this codicil placed in the hand of the ordinary of Troup County to give said William Dix and Miles Wilkinson an opportunity to comply with my wishes; and in the event they do, then Mr. H. T. Woodyard, the ordinary, can destroy this codicil; otherwise it is to stand of full force and effect. This .... day of November, 1915.' "

To this petition the defendants filed both special and general demurrers. Amendments were made to meet the special demurrer; after which the court sustained the general demurrer and dismissed the petition, and the petitioners excepted.

1. The court rightly held that the case should be dismissed upon general demurrer. It is unnecessary to discuss or consider the question of laches, insisted upon by the demurrants as a ground for dismissing the petition. The codicil gave to William Dix and Miles Wilkinson the land in controversy, it being the same land conveyed by the deed which petitioners alleged was void because of fraud and mental incapacity of the grantor to execute the deed. But inasmuch as the codicil and the deed both gave this land to the defendants, they were not put to an election as to whether they would claim under the codicil or under the deed. *Johnson* v. *Hayes,* 139 *Ga.* 218 (77 S. E. 73). In the case cited it was said: " In such a case if the devise and the deed be to the same person, and other benefits are given to him by the will, he is not put to an election to claim under the will or the deed — he may claim under both. (*a*) A testator, after making some specific legacies, devised and bequeathed the residue of his estate, both real and personal, to his seven named children, to be equally divided between them; thus he gave to two sons all his lands, to be accounted for to his executors at five dollars per acre, which sum when added to the balance of his estate was to be equally divided between all of his children, after the deduction of $500 for each of his sons and two of his daughters. Should either or both of the sons die leaving no living children, his or their land was to revert to the testator's estate. Subsequently to the making of the will the testator conveyed to the sons the land in consideration of their note for $6,300, and their agreement to allow him and his wife to occupy a portion of the dwelling-house and to support them during life. The sons entered into possession of the land. Upon the death of the testator the sons, who were the nominated executors, probated the will, and letters testamentary were issued to them. In their inventory of the assets' of the estate they included the note for the purchase-money of the land. *Held,* that the sons were not put to an election between the conveyance to them by deed and the benefits derived by them under the will. They take under both."

We do not think that a court of equity could hold that the grantees in the deed should be compelled to deed the land back that they might derive title from the provisions of the will. So far as relates to the fee to be paid D. J. Gaffney, Esq., it was no longer an existing claim against the estate, under the allegations of the petition, because petitioners themselves alleged that there were no debts of the estate. If there were other property in addition to the land in question belonging to the estate, and greater in value than the amount of the special legacies, it might become a question as to whether or not Dix and Miles Wilkinson could participate and have a share of the residual without conveying back the land. But that question is not involved in this record.

2. The ruling made in the second headnote requires no elaboration. _Judgment affirmed. All the Justices concur._